**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

DANIEL HELLMUTH,                                           Case No. 1:19-cv-258

       Plaintiff,

                                      Black, J.

    v.                                                         Bowman, M.J.

CITY OF TRENTON, et. al.

       Defendants.

**REPORT AND RECOMMENDATION**

Plaintiff initially filed this case against eight Defendants in the Butler County Court of Common Pleas, but on April 9, 2019, the Defendants timely removed the case to this Court. Plaintiff filed an "objection" to removal, properly construed and docketed in the record as a motion. (Doc. 6). In addition to Plaintiff's motion, all Defendants have jointly moved for judgment on the pleadings. (Doc. 5). Plaintiff has filed a response in opposition to Defendants' motion, to which Defendants have filed a reply. (Docs. 8, 11).

Pursuant to local practice, this case has been referred to the undersigned magistrate judge. For the following reasons, the undersigned recommends that Plaintiff's construed motion to remand be denied, and that Defendants' motion be granted.

## I.     Background of Four Related Federal Cases

Plaintiff, a resident of Texas proceeding pro se, has filed multiple state and federal cases that relate to the same underlying subject matter, including a total of four cases that were either initiated in, or removed to, this Court: Case No. 1:18-cv-340, Case No. 1:18-cv-397, Case No. 1:19-cv-258, and Case No. 1:19-cv-303.

### A. Plaintiff's Two Previously Dismissed Federal Cases

#### 1. Dismissal of Case No. 1:18-cv-340 Based on Claim Preclusion

In the first case filed in this Court on May 18, 2018, *Helmuth v. Hood*, Case No. 1:18-cv-340, Plaintiff sued his daughter and son-in-law, Leanne Hood and Herbert Hood II, over a property dispute relating to the conveyance of, and Plaintiff's ownership interest in, a property at 800 Dry Ridge Court in Trenton, Ohio in 2015 ("the property"). Plaintiff alleged that the property dispute caused his wife to suffer a fatal heart attack, and argued that the conveyance was invalid.

Prior to initiating that federal case, however, Plaintiff filed suit in the Butler County Court of Common Pleas in October 2017, generally alleging that the Hoods breached various agreements relating to the transfer of the property to them. The Hoods counterclaimed for quiet title and partition and moved for summary judgment on their counterclaim. Butler County Magistrate Busch-Heyman was assigned to the state court case, and she presided over a hearing on February 1, 2018. Following the hearing, Magistrate Busch-Heyman ordered that Plaintiff be allowed to enter the residence on February 3, 2018 for two hours to obtain personal property and inventory items to be returned to him at a mutually agreeable future date. Magistrate Busch-Heyman further ordered that the Hoods were permitted to have law enforcement present to maintain the peace. On April 18, 2018, Plaintiff voluntarily dismissed his state court claims without prejudice under Ohio Civ. R. 41(a). On June 1, 2018, the Butler County Court of Common Pleas affirmed Plaintiff's voluntary dismissal of his claims, but granted the Hoods' motion for summary judgment on their counterclaim.

Based upon the disposition in favor of the Hoods in the pre-existing Butler County

case, Magistrate Judge Litkovitz filed a Report and Recommendation ("R&R") on November 27, 2018, subsequently adopted by the Court, holding that all of Plaintiff's federal claims, including but not limited to claims for wrongful death, breach of contract, and adverse possession, were barred by the doctrine of claim preclusion, also known by its Latin name, res judicata. The Court therefore granted the Defendants' motion for judgment on the pleadings. (Docs 29, 37). "This federal action relates to the same civil property ownership dispute involving the Ohio home and deed as in the state court litigation and involves the same parties and claims that either were litigated in state court or could have been litigated in state court." (*See* Doc. 29 at *9, adopted at Doc. 37, appeal pending).

### 2. Jurisdictional Dismissal of Case No. 1:18-cv-397

A month after filing Case No. 1:18-cv-340, while that case was still pending, Plaintiff filed a second case in this Court, Case No. 1:18-cv-397. In that case, which was assigned to the undersigned magistrate judge, Plaintiff again sued his daughter, Leanne Hood, but also sued Chelsey Holland, Jamy Chaney, Unknown Trenton Police Officer(s), Trenton Police Chief Arthur Scott, Unknown Middletown Police Officer, Middletown Police Chief Rodney Muterspaw, Butler County Magistrate Busch-Hayman, and Attorney James Smith. Recognizing that Case No. 1:18-cv-340 and Case No. 1:18-cv-397 were related, the Court assigned both cases to presiding U.S. District Judge Barrett, despite the referral to separate magistrate judges. (Doc. 10). Notably, Plaintiff's amended complaint in Case No. 1:18-cv-397 failed to cite to any specific provision of constitutional or federal law. (*See* Doc. 4, Amended Complaint).

On June 26, 2018, the undersigned filed an R&R recommending that Case No.

3

1:18-cv-397 be dismissed for lack of subject matter jurisdiction, because the claims contained in Plaintiff's amended complaint did not include sufficient allegations to establish federal jurisdiction, and contained only "conclusory references to violations of his civil rights" which were insufficient to state any claim under 42 U.S.C. § 1983. (R&R, Doc. 16 at 3). Plaintiff filed documents that sought to further amend his pleading. Two defendants – the state court magistrate and Attorney Smith – also filed motions to dismiss.

In a Supplemental R&R, the undersigned addressed Plaintiff's allegations concerning the underlying prior property dispute, as well as his belief that on the date he went to retrieve his personal property, he was "being set up for a police shooting." (Doc. 47, filed 11/27/18, citing Doc. 4 at ¶¶3-5). Plaintiff also alleged that a Trenton Police Department Incident Report contained inaccurate statements (made by Plaintiff's daughter) that Plaintiff has a concealed carry weapon ("CCW") and is a "VETERAN WHO HAS BEEN MENTALLY UNSTABLE." (*Id.* at ¶5). Notwithstanding these allegations, the Supplemental R&R again recommended dismissal for lack of subject matter jurisdiction, as well as denial of Plaintiff's motion to further amend his complaint and the grant of the motions to dismiss filed by two Defendants. The Court pointed out that Plaintiff's allegations against Defendant Attorney Smith failed to state any claim since the only claims arose from oral statements made during court proceedings in connection with his representation of Plaintiff's daughter and son-in-law in state court – statements that are protected by an absolute privilege. Similarly, any claims against Magistrate Bush-Hayman were subject to dismissal based on her absolute judicial immunity. (Doc. 47).

On February 26, 2019, both the original R&R and the Supplemental R&R were adopted by Judge Barrett as the opinion of the Court, resulting in the dismissal of Case

4

No. 18-cv-397. (Doc. 64). It is worth noting that in multiple filings before Judge Barrett, including but not limited to Objections to the Supplemental R&R and a document construed as Objections to the first R&R, (Docs. 17, 48), Plaintiff argued that the Trenton Police Department accepted his daughter's statements without a proper investigation, that Magistrate Busch-Heyman and Smith had ex parte communications regarding the Trenton Police Department Incident Report during the earlier state court proceedings, and that various state court filings were ignored by state court judges. Plaintiff argued that, contrary to the R&R and Supplemental R&R, his allegations had adequately stated constitutional violations involving "the attempt by [Defendant] Hood under the color of law to orchestrate [my] death by police shooting," as claims separate from the pre-existing property dispute. (Doc. 64 at 3). Judge Barrett overruled Plaintiff's Objections, holding that Plaintiff had not shown "outside of baldly concluding that he has, in fact, presented arguments under the U.S. Constitution – how the facts and arguments in his Amended Complaint grant this Court subject matter jurisdiction." (Doc. 64 at 7). In overruling Objections, the Court declined to consider the introduction of "new facts and allegations against certain Defendants" or "claims not found in his Amended Complaint." (*Id.* at 6, comparing Docs. 17 and 48 with Doc. 4).[1]

## B. Two New Federal Cases Removed from State Court

### 1. Case No. 1:19-cv-258

Plaintiff initiated the above-captioned lawsuit as Butler County Court of Common Pleas Case No. 2019 03 0606, but the case was removed to this Court. In this case, Plaintiff has filed suit against the City of Trenton, Ohio, Mayor Calvin Woodray, Vice

---

[1] Plaintiff's appeal of Judge Barrett's Order in Case No. 1:18-cv-397 was initially dismissed for failure to prosecute, but was recently reinstated by the Sixth Circuit and remains pending.

Mayor Richard Miller, and members of the Trenton City Council including Melissa Hobbs, Jennifer J. Combs, Ryan Montgomery, Ryan Perry, and Raymond L. Nichols. The central allegations in the instant complaint relate to the underlying property dispute between Plaintiff and his daughter, which led to his daughter allegedly making "false statements" and inviting a police presence in January 2018 during Plaintiff's retrieval of his personal property. Plaintiff refers to the wrongful death lawsuit he filed against his daughter and son-in-law, Case No. 1:18-cv-340, "for the harassment of …Hellmuth's wife concerning the ownership of the property to the point of Susan Gail Hellmuth having a fatal heart attack." (Doc. 2 at 14). Plaintiff goes on to assert that "with his wife deceased, he was the only person left to eliminate in order to have a clear title to the property at 800 Dry Ridge Court, Trenton, Ohio, whereas the Plaintiff…was set up for an intended Trenton Police shooting, allowing the Trenton Police to shoulder complete responsibility for the death." (*Id.* at 14-15). Plaintiff has attempted to set forth claims only against Trenton city officials, without including his daughter or son-in-law as defendants.

Plaintiff generally alleges that the Defendants "failed in their duties to perform their jobs and protect…citizens" as "elected officials" of the City of Trenton. (Doc. 3 at 1). Plaintiff further alleges that his daughter, who he refers to as "Middletown Police Major Leanne Hood" throughout the complaint, "made False Statements and the City of Trenton Police Department, under supervision of the Trenton City Council, ***did nothing***." (*Id.* at 2, emphasis original).[2] He alleges that the City of Trenton Mayor "knew about the actions

---

[2] In Case No. 1:19-cv-258, Plaintiff repeatedly describes his daughter as a Middletown Police Major. Although Plaintiff does not identify Defendant Hood's relationship as his daughter within the body of the complaint, that relationship is detailed in the Trenton Police Department Incident /Offense Report attached as an exhibit to Plaintiff's pleading, as well as in multiple prior complaints filed by Plaintiff including Case No. 1:18-cv-340. (*See, e.g.*, Complaint, Doc. 2 at 14, referencing the earlier federal case).

of his employees because he was named as a co-defendant in Ohio case CV 2017 10 2386 before Honorable Magistrate Lynn Busch-Heyman dismissed him in the third Magistrate's hearing…." (*Id.* at 2). Plaintiff alleges that other city officials were also aware of his 2017 lawsuit concerning the underlying property dispute but failed to intervene or investigate. (*Id.* at 2-3). Plaintiff alleges that the officials' failure to investigate gives rise to six separate claims in violation of various state and federal laws. (*Id.* at 3).

The complaint describes the events of January 2018 as "The Incident" that gives rise to all claims. Plaintiff describes at least three Trenton Police cruisers in the vicinity who appeared to be observing his collection of personal property at his daughter's Trenton residence. Plaintiff alleges that when he got out of his car, Defendant Leanne Hood "handed him a box of his possessions but refused to allow him to enter the property for additional possessions," despite the lack of any "court order denying him access to his property inside the house." (Doc. 2 at 13). Plaintiff alleges that as a "combat veteran," he "recognized an ambush" by onlooking police officers and his son-in-law who were "all standing behind their automobiles, like they were expecting some kind of violence from the Plaintiff…." (*Id.*) Plaintiff alleges that a copy of the Trenton Police Report stated that Plaintiff had a concealed carry weapon and was a "Veteran who has been mentally unstable," which Plaintiff alleges were false statements made by his daughter. (*Id.* at 14).

The referenced Incident/Offense Report is attached as one of the exhibits to his complaint.[3] The Report reflects a request for "stand by" police presence made on January 11, 2018, and approved on January 13, 2018:

> STAND BY FOR PROPERTY EXCHANGE DANIEL HELLMUTH CCW
> AND VETERAN WHO HAS BEEN MENTALLY UNSTABLE OFF DUTY

---

[3] As an additional exhibit, Plaintiff has attached a copy of a motion for summary judgment filed by Plaintiff in March 2018 in Butler Common Pleas Case No. CV 2017 10 2386. (Doc. 2 at 20).

OFFICER FROM MIDDLETOWN REQ STAND BY FOR A PROPERTY
EXHANGE MR. HELLMUTH GOT HIS PROPERTY

(Doc. 2 at 19).  The narrative portion of the same report, completed by Trenton Officer

Jeffrey Root, states:

> I responded to 800 Dry Ridge Ct. to meet with Leanne Hood reference a
> standby while her father (Daniel Hellmuth) came and got some property
> from the residence.  Leanne and Daniel are going through a civil dispute
> over the residence and Daniel no longer lives there.  Leanne stated Daniel
> requested to come get some property [from] the residence yesterday in
> court, so Leanne had it waiting for him when he arrived.  Daniel pulled up in
> his vehicle and Leanne handed him a box of his property that he requested.
> Daniel became animated with his movements and demanded he get to go
> into the residence to get more property.  Leanne refused to allow him to go
> in and told him he had no rights to the property.  Daniel then called Leanne
> a "bitch" and got back into his vehicle and left the premises.

(*Id.*)

Plaintiff alleges that Case No. 1:19-cv-258 "is **NOT** about a property dispute but it

**IS** about the City of Trenton's *failure to do a proper investigation* of Daniel L. Hellmuth,

Pro Se being set up for a police shooting by the Trenton Police orchestrated by City of

Middletown Police Major Leanne Hood, under the color of law, and the City of Trenton's

*failure to intervene* and several violations of Ohio Revised Code."  (Doc. 2 at 16,

emphasis original).   Plaintiff asserts the following causes of action: "neglect of duty" by

City officials and employees; "causation;" "negligence to do a proper investigation and

complicity with City of Middletown Police Major Leanne Hood, under color of law, to

perpetuate the criminal act of aggravated menacing, False Statements, Concealment 18

U.S.C. § 1001" as well as a failure to intervene in "aggravated assault."  He seeks $10

million in damages.  (*Id.* at 16).

As discussed below, the undersigned recommends that Defendants' motion for

judgment on the pleadings be granted, and that this case be dismissed.

8

**2. Case No. 1:19-cv-303**

Like the above-captioned case, Case No. 1:19-cv-303 was initiated by Plaintiff in Butler County Common Pleas Court but was recently removed to this Court. In Case No. 1:19-cv-303, Plaintiff has sued the City of Middletown and a host of officials from that City. As in the case against Trenton city officials, Plaintiff's lawsuit against various Middletown officials does not identify his daughter among the defendants, but is still based upon his daughter's request for standby police assistance in January 2018. The complaint contains numerous allegations similar to those contained in Case No. 1:19-cv-258 – albeit with Middletown city officials substituted as Defendants in lieu of Trenton city officials. Thus, the complaint in Case No. 1:19-cv-303 alleges:

> This case is NOT about a property dispute but it IS about the City of Middletown's failure to do a proper investigation of Daniel L. Hellmuth, Pro Se being set up for a police shooting by the Trenton Police orchestrated by City of Middletown Police Major Leanne Hood, under color of law and the City of Middletown's failure to intervene and several violations of Ohio Revised Code.

(Doc. 4 at 1). Plaintiff further alleges that:

> The City of Middletown employees are guilty of causation, the relationship of cause and effect of an act or omission, active concealment of a known felony rather than merely failing to report it and damages alleged in a tort or personal injury action, complicity with City of Middletown Notary Shelley Meehan and City of Middletown Police Major Leanne Hood to perpetuate the criminal act of aggravated menacing, false statements, concealment 18 U.S.C. § 1001 and Ohio Revised Code 2921.22 Failure to report a crime or knowledge of a death or burn injury. Because of their actions or inactions or criminal activity, Plaintiff Daniel L. Hellmuth, Po Se lost ownership of his $350,000.00 home and was set up to be murdered in a police shooting by Trenton Police under aggravated assault, orchestrated by Middletown Police Major Leanne Hood and protected by the City of Middletown. Daniel L. Hellmuth, Plaintiff Pro Se is the only civilian in this Complaint, all of the Defendants are Officers of the Court.

(Doc. 4 at 2). As in Case No. 1:19-cv-258, in Case No. 1:19-cv-303, Plaintiff seeks a

monetary judgment of $10 million against the City of Middletown and the various City officials. (Doc. 4 at 13).

On June 7, 2019, Defendants filed a Rule 26(f) report that states their intention to file a motion for judgment on the pleadings. Defendants reiterated that intention at a telephonic scheduling conference held on June 10, 2019, at which Plaintiff failed to appear.[4] Since that date, however, no motions have been filed.

### III. Analysis

### A. Plaintiff's Construed Motion to Remand

On April 26, 2019, Plaintiff filed an "Objection to Case Removal from Butler County Common Pleas Court." (Doc. 6). More properly construed as a motion to remand to state court, Plaintiff's motion should be denied.

Plaintiff argues that his case was improperly removed because he was not permitted time to object before the case was opened in this Court. Plaintiff (mistakenly) asserts that the "Butler County Clerk of Court denied the removal." There is no record of the state court retaining this case following the filing of the Notice of Removal. Moreover, a state court has no authority to retain jurisdiction once a facially valid Notice of Removal is filed. For similar reasons, Plaintiff's complaint about an alleged gap between the April 9, 2019 certificate of service on the Notice of Removal and the April 15, 2019 date on which the Notice was allegedly docketed in state court does not deprive this Court of

---

[4] On July 15, 2019, Plaintiff filed an "objection to minute entry," alleging that he did not receive notice of the scheduled telephonic conference "nor was there a notice on the Docket. [Plaintiff] checks the docket daily for any notice due to the fact that mail service in Round Rock, Texas leaves much to be desired." (Doc. 13). Contrary to Plaintiff's assertion, Notice of the conference was electronically docketed on June 10, 2019 (Doc. 12) and was sent by regular mail to Plaintiff on the same date. No mail addressed to Plaintiff has been returned to this Court.

jurisdiction.[5]

Removal of this case was appropriate under 28 U.S.C. § 1446.  The inquiry as to whether this Court can validly exercise subject matter jurisdiction is distinct from the inquiry as to whether Plaintiff has stated any claim as a matter of law.  Here, federal question jurisdiction exists under 28 U.S.C. §1331,[6] based upon Plaintiff's clearly articulated claims under 42 U.S.C. § 1983 and 18 U.S.C. § 1001. The Notice properly reflects the unanimous consent of all Defendants.  Federal question jurisdiction exists when a plaintiff pleads "a colorable claim 'arising under' the Constitution or laws of the United States." *Arbaugh v. Y&H Corp.*, 126 S.Ct. 1235, 1244, 546 U.S. 500, 513 (U.S.,2006) (quoting *Bell v. Hood,* 327 U.S. 678, 681-685, 66 S.Ct. 773 (1946)).  Although Plaintiff's claim under 18 U.S.C. § 1001 alone might be too thin a reed on which to base federal jurisdiction, Plaintiff has set forth a "colorable" federal claim under the civil rights statute.  (*See, e.g.*, Doc. 2 at 2, 6, and 12, alleging that the Defendants violated 42 U.S.C. § 1983 by failing to intervene to stop Constitutional violations).[7]

## B.  Defendants' Motion for Judgment on the Pleadings

Having determined that this Court may validly exercise subject matter jurisdiction over this case under § 1983, the undersigned turns to the Defendants' motion for

---

[5] Plaintiff also complains that a "motion" filed by Plaintiff after removal to this Court was not filed in the federal court record. (Doc. 9 at 1).  The referenced document is not a motion but is captioned as a "Reply to Defendant's Answer to Complaint."  No "reply" to an answer is authorized by the Federal Rules of Civil Procedure.  Therefore, although Plaintiff has now filed the document in this Court's record, no further action on the document will be taken.

[6] Although it is conceivable that the case also could have been removed under diversity jurisdiction, the Defendants appear to have waived that potentially alternate basis for jurisdiction by failing to include it in the Notice of Removal.  *See generally, Nero v. Merati North America, Inc.,* 2017 WL 4124976 at *2 (N.D. Ohio Sept. 18, 2017) (holding that defendants may not add new grounds for removal after the expiration of a 30-day period for amending the Notice of Removal, collecting cases).

[7] The undersigned is well aware that she found related allegations to be insufficient to establish federal question jurisdiction in Case No. 1:18-cv-397.  However, Plaintiff's amended complaint in that case was far less detailed, and contained no reference to the U.S. Constitution or to any federal statutes.  By contrast, Plaintiff's complaint in this case asserts both constitutional and federal statutory violations.

judgment on the pleadings.[8]   Defendants present three arguments:  (1) that they are immune from liability under Ohio Rev. Code § 2744; (2) that all of Plaintiff's claims are barred by the doctrine of res judicata; and (3) that Plaintiff has failed to state any cognizable claim for relief.  (Doc. 5).  On May 10, 2019, Plaintiff filed a construed response in opposition to the motion, (Doc. 8), and on May 21, 2019, the Defendants filed a reply memorandum. (Doc. 11).

Briefing was complete upon the filing of Defendants' reply.  However, on July 8, 2019, Plaintiff filed an unauthorized "reply to Defendant[s'] reply," construed as a sur-reply. (Doc. 17).  Because it is not authorized by the civil rules of procedure and was filed without leave of this Court, Plaintiff's sur-reply is not further considered.[9]

Having considered the authorized memoranda and relevant authority, the undersigned recommends that the motion for judgment be granted based upon Defendants' first and third arguments.

### 1.  Ohio Rev. Code § 2744

Both the individual Defendants and the City of Trenton first argue that they are immune from suit under state law.   Under Ohio R.C. §2744.02(A)(1), "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." *Id.*

---

[8] Defendants' motion erroneously refers to Plaintiff's "Amended Complaint;" the record reflects only Plaintiff's original (not amended) complaint.

[9] Neither the Federal Rules of Civil Procedure nor Local Rules anticipate the filing of a sur-reply.  Only in rare instances, upon the filing of an appropriate motion with good cause shown, will this Court permit the filing of a sur-reply.  No such circumstances exist here.

> Ohio's immunity statute draws no distinction between suits against an individual government employee in his official as opposed to his personal capacity. The Ohio Court of Appeals has held that an action against an officer in his "official capacity" is simply another way of pleading an action against the governmental entity itself.

*Beckett v. Ford*, 613 F.Supp.2d 970, 983 (N.D. Ohio 2009) (quoting *Chesner v. Neyer*, 477 F.3d 784, 797 (6th Cir. 2007) (additional citations omitted)).

Plaintiff's allegations make clear that all of his claims rest on statements contained in the January 2018 Trenton Police Incident Report and the police presence that occurred at his daughter's residence in January 2018. Police services are considered governmental functions. *See Beckett*, 613 F. Supp. at 984. Therefore, statutory immunity bars Plaintiff's suit.

In his construed response in opposition to Defendants' motion, Plaintiff suggests that the following statutory exception applies:

> Except as otherwise provided in sections 3314.07 and 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions.

Ohio R.C. § 2744.02(B)(2).

The cited exception to immunity is inapplicable for two reasons. First, the underlying incident about which Plaintiff complains involved a police (i.e. "governmental") function. Plaintiff fails to explain how his allegations could be construed as challenging a "proprietary" function rather than a "governmental" function as defined under state law. *See generally* Ohio R.C. § 2744.01(G)(1) (setting forth definition of proprietary function, and specifically excluding governmental functions). Any attempt to recharacterize the failure of City officials to "intervene" or to "investigate" Plaintiff's complaints about *police*

conduct cannot transform the underlying conduct from a governmental function to a proprietary one.

In addition, Plaintiff fails to allege any physical injury, death or other qualifying loss caused by the negligent performance of the Defendants. Instead, Plaintiff argues that he suffered "*threatened* injury by being set up for a police shooting." (Doc. 8 at 10, emphasis added). Although Plaintiff describes the allegedly false statements in the police incident report and/or their standby presence as an "aggravated assault"[10] he never alleges any physical contact or injury, and it is plain that none occurred. In short, the Defendants are entitled to immunity from all claims presented under state law.

### 2. Claim Preclusion or Res Judicata

Defendants next argue that this Court's prior dismissal of Case No. 1:18-cv-397 bars this case under the doctrine of claim preclusion, which bars re-litigation of the same claims, or of claims that could have been brought in a prior suit. Although it is true that the Court granted motions to dismiss filed by Magistrate Bush-Hayman and Attorney Smith, the Court also held that the entirety of Case No. 1:18-cv-397 should be dismissed based on a lack of subject matter jurisdiction. (*Id.*, Doc. 64 at 8). Because there is considerable doubt as to whether a dismissal of Case No. 1:18-cv-397 for lack of subject matter jurisdiction should be deemed equivalent to a dismissal of all claims on the merits, the doctrine of claim preclusion would not bar the entirety of Plaintiff's claims here.[11] *See*

---

[10] (*See* Doc. 8 at 12, "The crime of aggravated assault was committed by [non-party] Middletown Police Major Leanne Hood.")

[11] The undersigned declines to consider *sua sponte* whether the prior dismissal of Case No. 1:18-cv-340 would bar Plaintiff's current claims. Likewise, based on the rejection of Defendants' argument that Case No. 1:18-cv-397 was dismissed on the merits, the undersigned finds no need to reach the additional elements required to apply the doctrine of claim preclusion, including but not limited to whether the previously identified defendants are in privity with those identified in this case.

*Wilkins v. Jakeway*, 183 F.3d 528 (6th Cir. 1999); *Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 918 F.2d 658, 664 (6th Cir. 1990) (holding that under Ohio claim preclusion rules, a final judgment by a court that lacked subject matter jurisdiction did not have claim preclusive effect).

### 3. Failure to State a Claim

Defendants' final argument is that they are entitled to judgment on the pleadings based upon Plaintiff's failure to state any claim as a matter of law. As stated, Plaintiff attempts to set forth the following six claims: (1) Neglect of Duty; (2) Causation; (3) Negligence; (4) Complicity; (5) False Statements/Concealment; and (6) Failure to Intervene. The undersigned agrees that Plaintiff's allegations are insufficient to state any claim as a matter of law for all of the reasons stated by Defendants.

In his opposition to dismissal, Plaintiff argues that he has stated a claim against the Mayor under Ohio R.C. § 733.34, a statute through which a mayor is endowed with the authority to "supervise the conduct of all the officers of the municipal corporation, inquire into an examine the grounds of all reasonable complaints against any of such officers, and cause their violations or neglect of duty to be promptly punished or reported to the proper authority for correction." However, the statute does not provide for a private cause of action. Moreover, to the extent that the essence of all of Plaintiff's claims may be interpreted as a failure to supervise, there is no *respondeat superior* liability for municipal officials under 42 U.S.C. § 1983, and there is no *respondeat superior* exception to municipal liability under state law. *See generally Matthews v. City of Toledo*, 2016 WL 7474400 at *6 and at n.6 (N.D. Ohio Dec. 29, 2016).

Plaintiff next argues that he has properly alleged "neglect of duty" under federal

law, specifically citing 42 U.S.C. §1986, which provides a cause of action for neglect to prevent a civil rights conspiracy.[12]  A prerequisite for a claim under § 1986, however, is the existence of an actionable claim under § 1985.  Plaintiff fails to allege any class-based, invidious discriminatory animus that would violate 42 U.S.C. § 1985, nor does his complaint otherwise set forth any non-frivolous conspiracy claim under that statute.  *See generally Riddle v. Egensperger*, 266 F.3d 542, 2001 Fed. App. 0341P, 549 (6th Cir. 2001); *Alahverdian v. Ohio*, 2013 WL 1964009 at *12 (S.D. Ohio May 10, 2013).

Plaintiff attempts to assert a cause of action entitled "causation," but no such cause of action exists.  As Defendants note, "causation" is generally no more than an element of other claims.

Plaintiff asserts "complicity" under Ohio R.C. § 2923.03, but no criminal causes of action may be asserted by Plaintiff in this civil case.  For those reasons (among others), Plaintiff's citation to 18 U.S.C. § 1001 fails to state any civil claim for "false statements/concealment" against any Defendant.

Plaintiff's assertion of a claim for "failure to intervene" also fails as a matter of law. Plaintiff's citation to the criminal code, 18 U.S.C. § 242, fails to support any civil claim. And, despite Plaintiff's argument that various Defendants violated his civil rights by failing to intervene in the actions of police officers, his claim cannot be differentiated from a failure to supervise claim, which is not cognizable under § 1983.  Although the genesis for Plaintiff's complaint is "The Incident," Plaintiff fails to name as defendants the police officers who took part in "The Incident."  Apart from theories that cannot be differentiated

---

[12] Plaintiff's complaint cites to a 1934 case from the Florida Supreme Court.  As Defendants point out, neither that case nor the Florida law it interprets are applicable in Ohio.

16

from respondeat superior over police action to which Plaintiff objects,[13] Plaintiff has failed to allege the involvement of any identified Defendant in the violation of any constitutional right sufficient to support any claim under 42 U.S.C. § 1983.   Plaintiff also fails to allege any municipal policy or custom.  *See generally*, *Polk County v. Dodson*, 454 U.S. 312, 328 (1981) (municipal policy must be "moving force" behind constitutional deprivation, quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 (1978)).

Last but not least, Plaintiff has failed to state a viable claim for negligence against any Defendant, because he has failed to allege an actual injury, or to show any duty owed by any Defendant to the Plaintiff to investigate the informational police report that led to the standby police assistance rendered in January 2018.   Even if Plaintiff could show a duty, he has failed to establish any breach of duty by anyone, and has utterly failed to demonstrate that the Defendants' actions proximately caused any damages.

**IV. Conclusion**

Accordingly, **IT IS RECOMMENDED**: (1) That Plaintiff's Objection to Removal, herein construed as a Motion to Remand, (Doc. 6) be **DENIED**; (2) That Defendants' Motion for Judgment on the Pleadings (Doc. 5) be **GRANTED**; and (3) That this action be **DISMISSED** in its entirety with **PREJUDICE**.  It is further **RECOMMENDED** that the Court certify pursuant to 28 U.S.C. § 1915(a) that for the foregoing reasons an appeal of any Order adopting this Report and Recommendation would not be taken in good faith and deny Plaintiff leave to appeal *in forma pauperis*.

---

[13] Notwithstanding Plaintiff's sincere belief that the police should not have accepted his daughter's statements and/or have been present in January 2018, the police conduct as alleged does not appear to have violated any well-established constitutional right.  Regardless of Plaintiff's perception that he was being set up for an "ambush," no actual contact between officers and Plaintiff occurred.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

DANIEL HELLMUTH,                                           Case No. 1:19-cv-258

        Plaintiff,

                                                  Black, J.
    v.                                                                    Bowman, M.J.

CITY OF TRENTON, et. al.

        Defendants.


**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written

objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after

being served with a copy thereof.  That period may be extended further by the Court on

timely motion by either side for an extension of time.  All objections shall specify the

portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in

support of the objections.  A party shall respond to an opponent's objections within

**FOURTEEN DAYS** after being served with a copy of those objections.  Failure to make

objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas*

*v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).